UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AKILE FERNANDES a/k/a Akile
Fernandez a/k/a Julio Cesar Rivas
Ramirez,

            Petitioner,

v.

ROBERT T. JOHNSON et al.,

           Respondents.

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 03/05/13

12 Civ. 2774 (LBS)

**MEMORANDUM & ORDER**

SAND, J.

    Respondents have moved to dismiss Petitioner Akile Fernandes's petition for a writ of *coram nobis*, arguing that the Court lacks subject-matter jurisdiction. This matter is before us on a November 8, 2012, Report and Recommendation ("R&R") of United States Magistrate Judge James C. Francis IV, in which Magistrate Judge Francis recommended dismissing the petition. Fernandes filed an objection pursuant to 28 U.S.C. § 636(b)(1) on November 21, 2012, and, after a brief extension, filed a brief in support of his objection on December 11, 2012. After *de novo* review of Magistrate Judge Francis's R&R and the parties' filings, we adopt the R&R in its entirety.

**STANDARD OF REVIEW**

    A district court reviewing a magistrate judge's report and recommendation "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). If a party files written objections to the report and recommendation, the district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.*

**DISCUSSION**

1

I. Writ of *Coram Nobis*

On April 10, 2012, Fernandes petitioned this Court for a writ of *coram nobis* to vacate a September 28, 2011, decision by New York Supreme Court Justice Edgar G. Walker denying the vacation of Fernandes's guilty plea to Attempted Criminal Possession of a Controlled Substance in the Third Degree. *See* Aff. Guttlein 15, Apr. 10, 2012, ECF No. 1; Pet. ¶ 5; Pet. Ex. I. Fernandes has finished serving the sentence for that crime, but is still trying to vacate his guilty plea because of its collateral immigration consequences. *See* Pet. ¶ 3 (arguing that the Court should grant a writ of *coram nobis* because it is "a remedy of last resort for petitioners who are no longer in custody pursuant to a criminal conviction"); Aff. Guttlein ¶ 12 (noting that Fernandes was sentenced to five years of probation in 1995); *id.* ¶ 10 (stating that the conviction made Fernandes "mandatorily removal, [sic] permanently banished from the United States and ineligible from adjusting his status"); Supp. Br. Supp. Objection 3 ("[Fernandes] is presently in custody at the Metropolitan Correctional Center for federal charges of illegal reentry as an aggravated felon, solely because of the instant conviction."). Fernandes argues that his counsel was constitutionally ineffective in recommending Fernandes plead guilty because he was not warned about the immigration consequences of his plea as was required for the petitioner in *Padilla v. Kentucky*, 130 S. Ct. 1473 (2010), *see* Pet. ¶¶ 26–37, and because his counsel had a conflict of interest, *see* Pet. ¶¶ 8–9, 11. Although the Supreme Court's very recent decision in *United States v. Chaidez*, No. 11-820 (U.S. Feb. 20, 2013), demolishes Fernandes's main case because it held that *Padilla* was not retroactive, we discuss the jurisdictional questions because they are logically antecedent and dispatch Fernandes's complaint about his counsel's conflict of interest as well.

2

On August 30, 2012, Respondents moved to dismiss for lack of jurisdiction, explaining that federal courts do not have subject-matter jurisdiction to grant the writ of *coram nobis* to vacate state court decisions. *See* Mem. Law Supp. Mot. 2–5. Magistrate Francis agreed, *see* R&R 4–6, and so do we. "[F]ederal courts derive their power to issue writs of error *coram nobis*" from the All-Writs Act. *Finkelstein v. Spitzer*, 455 F.3d 131, 134 (2d Cir. 2006) The All-Writs Act, in turn, only allows federal courts to issue "all writs necessary or appropriate *in aid of their respective jurisdictions*." *Id.* (quoting 28 U.S.C. § 1651(a) (emphasis added)). "As the text plainly indicates, 'the All Writs Act does not confer jurisdiction on the federal courts.'" *Id.* (quoting *Syngenta Crop Prot., Inc. v. Henson,* 537 U.S. 28, 33 (2002)); *cf. also Chaidez*, No. 11-820, slip op. at 2 n.1 (suggesting that *coram nobis* petitions can only be brought by persons who were at one point eligible for habeas relief "under 28 U. S. C. § 2255 or § 2241").

Fernandes objects, arguing that the All-Writs Act has been modified somehow by *Padilla v. Kentucky*, 130 S. Ct. 1473 (2010), because courts can no longer "use a direct versus collateral consequences distinction regarding immigration consequences of a criminal conviction and an attorney's duty to advise his client regarding said consequences." Supp. Br. Supp. Objection 2. At best, this argument is baffling. Whether failure to warn about the immigration consequences of a guilty plea now constitutes ineffectiveness of counsel has no bearing on whether the All-Writs Act confers subject-matter jurisdiction. It still does not.

Accordingly, we adopt Magistrate Francis's R&R, which states that we must dismiss the petition for lack of subject-matter jurisdiction.

II. Conversion to *Habeas Corpus*

In his brief opposing Respondents' motion to dismiss and in his brief supporting his objection, Fernandes suggests that if we find we have no subject-matter jurisdiction to issue a

3

writ of *coram nobis*, we should convert his petition to a petition for *habeas corpus*. *See* Aff. Guttlein ¶ 5, ECF No. 9; Supp. Br. Supp. Objection 2–3. Magistrate Judge Francis recommended not converting this petition to a *habeas corpus* petition because that *habeas* petition would still have to be dismissed. R&R 7–8. We agree.

Relying on *Ogunwomoju v. United States*, 512 F.3d 69 (2d Cir. 2008), and *Camara v. New York*, No. 11 Civ. 8235, 2012 WL 3242697 (S.D.N.Y. Aug. 9, 2012), Magistrate Francis found that the Court lacks subject-matter jurisdiction because Fernandes was not in custody for § 2254 purposes because Fernandes concluded his sentence for his crime. *R&R* 7. Being in custody of the Federal Bureau of Prisons awaiting trial for illegal entry, predicated on the immigration consequences of the earlier state crime, did not constitute § 2254 custody either. *Id.*

We agree with Magistrate Judge Francis that *habeas* relief would be inappropriate here because the custody requirement cannot be met. "This Court must follow [binding Second Circuit] precedent unless a subsequent decision of the Supreme Court so undermines it that it will almost inevitably be overruled by the Second Circuit." *United States v. Emmenegger*, 329 F. Supp. 2d 416, 429 (S.D.N.Y. 2004). Contrary to Fernandes's argument, *Padilla* did not clearly undermine *Ogunwomoju*, a Second Circuit case that held that immigration detention or being subject to an order of removal as a consequence of state sentence are not state custody. In *Ogunwomoju*, an immigration detainee tried to challenge his state drug conviction, but he had already served his sentence for that conviction. The Second Circuit held that Ogunwomoju was not in custody because "once the sentence imposed for a conviction has completely expired, the collateral consequences of that conviction are not themselves sufficient to render an individual 'in custody' for the purpose of a habeas attack upon it." *Ogunwomoju*, 512 F.3d at 75 (quoting *Maleng v. Cook*, 490 U.S 488, 492 (1989) (per curiam)) (internal quotation marks omitted).

Fernandes again argues that *Padilla* rejected the distinction between direct and collateral consequences, but *Padilla* did not eliminate consideration of direct and indirect consequences in every area of the law. Instead, *Padilla* held that direct and collateral consequences were an inappropriate analytical tool in the *ineffectiveness assistance of counsel* framework when considering immigration consequences.[1] In so doing, *Padilla* avoided taking a position as to whether immigration consequences were direct or indirect or whether direct or indirect consequences were still an acceptable way to determine "custody" in a § 2254 case.[2]

Accordingly, no court in this circuit has held that *Ogunwomoju* was so undermined as to make its overruling inevitable. Instead, other lower courts have followed *Ogunwomoju* since *Padilla*. *See Owuor v. Viator ex rel. N.Y.*, No. 12 Civ. 4338, 2012 WL 3930554, at *1–2 (E.D.N.Y. Sept. 10, 2012); *Camara*, 2012 WL 3242697, at *3–4, *adopting* 2012 WL 3242713, at *2–4 (S.D.N.Y. Mar. 13, 2012); *cf. Rodriguez v. United States*, No 98 Crim. 764, 2012 WL 6082477, at *3 (S.D.N.Y. Dec. 4, 2012); *Medina v. United States*, Nos. 12 Civ. 238 & 86 Crim. 238, 2012 WL 742076, at *2 (S.D.N.Y. Feb. 21, 2012).

Because *Fernandes* has not shown the Supreme Court's nuanced statements about direct and collateral consequences will result in the inevitable overruling of *Ogonwomoju*, we follow *Ogonwomoju*, and hold Fernandes is not in custody, as Fernandes originaly admitted. *See* Pet.

---

[1]
> We, however, have never applied a distinction between direct and collateral consequences to define the scope of constitutionally "reasonable professional assistance" required under *Strickland*, 466 U.S., at 689, 104 S.Ct. 2052. Whether that distinction is appropriate is a question we need not consider in this case because of the unique nature of deportation. . . .
> Deportation as a consequence of a criminal conviction is, because of its close connection to the criminal process, uniquely difficult to classify as either a direct or a collateral consequence. The collateral versus direct distinction is thus ill-suited to evaluating a *Strickland* claim concerning the specific risk of deportation. We conclude that advice regarding deportation is not categorically removed from the ambit of the Sixth Amendment right to counsel.

*Padilla*, 130 S. Ct. 1473, 1481–82.

[2] *Padilla* was not a § 2254 case. *See Commonwealth v. Padilla*, 253 S.W.3d 482, 483 (Ky. 2008) (explaining that Padilla's challenge was raised under Kentucky Rule of Criminal Procedure 11.42), *rev'd*, 130 S. Ct. 1473.

¶ 3 (arguing that the Court should grant a writ of *coram nobis* because it is "a remedy of last resort for petitioners who are no longer in custody pursuant to a criminal conviction and therefore cannot pursue . . . a writ of *habeas corpus*").

Because, under Second Circuit law, Fernandes is not in "custody," we would have no subject-matter jurisdiction to consider his claim as a *habeas* petition. We therefore decline to convert his petition to a *habeas* petition.

### III. Stay

Finally, Fernandes suggests we defer decision until the Supreme Court's decision in *Chaidez*. As noted above, this request has been made moot by the Supreme Court. *Chaidez* was decided on February 20, 2013, and concluded that "under the principles set out in *Teague* v. *Lane*, 489 U. S. 288 (1989), *Padilla* does not have retroactive effect." *Chaidez*, No. 11-820, slip op. at 1.

### CONCLUSION

All of Fernandes's arguments have been considered and are without merit. For the above reasons, it is hereby ordered that Judge Francis' report is approved, adopted, and ratified by the Court in its entirety. Fernandes's petition is DENIED.

SO ORDERED.

Dated: _March 6_, 2013
       New York, NY

_____
Leonard B. Sand
U.S.D.J.